O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | CV 16-08317-RSWL-RAO |
| Plaintiff-in-Interpleader, | **ORDER re: Gicana's Motion for Summary Judgment on the Interpled Funds and/or Retirement Benefits** [45] |
| v. | |
| BAMBI GICANA; and ARACELI MALONEY, | |
| Defendants-in-Interpleader. | |
| AND RELATED CROSS AND COUNTER CLAIMS | |

Plaintiff-in-Interpleader Metropolitan Life Insurance Company ("MetLife") filed the instant Action due to Defendants-in-Interpleader Bambi Gicana ("Gicana") and Araceli Maloney's ("Maloney") competing claims to funds from the AT&T Group Life Insurance Program (the "Plan"). See Compl., ECF No. 1. The Plan

1

is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), sponsored by AT&T, and funded by a group life insurance policy issued by MetLife. Id. ¶ 6. Currently before the Court is Gicana's Motion for Summary Judgment as to Interpled Funds and/or Retirement Benefits ("Motion") [45]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS in part** and **DENIES in part** Gicana's Motion.

### I. BACKGROUND

**A. Factual Background**[1]

After AT&T hired Efren Molina Martinez ("Decedent") on October 31, 1998, Decedent enrolled in the Plan for basic life insurance coverage. Gicana's Statement of Undisputed Facts ("SUF") ¶¶ 1-3, ECF No. 49-1. He also acquired a 401(k) retirement plan with AT&T, which is governed by ERISA. Id. ¶¶ 78-79. On March 3, 2005—before their marriage on March 25, 2005—Decedent and Gicana executed a prenuptial agreement, a copy of which Decedent provided to his sister, Maloney, since she was going to be the executor of his estate and

---

[1] The Court makes the following factual findings. See C.D. Cal. R. 56-3 ("[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist."). But see Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986)("There is no requirement that the trial judge make findings of fact [when granting summary judgment because] the threshold inquiry [is whether] there are any genuine factual issues."); Taybron v. City & Cty. of S.F., 341 F.3d 957, 959 n.2 (9th Cir. 2003).

2

trustee of his trust. Id. ¶¶ 11-14. The prenuptial agreement states that "[a]ny contributions made by any employer to any retirement plans . . . shall remain the separate property of the party for whose benefit such contributions were made," but "[t]his Agreement shall not preclude one spouse from bequeathing or devising property to the other by will executed after the date of this Agreement, nor shall it constitute a Waiver of such a bequest or devise." Gicana's Ex. Volume 1 ("Gicana's Vol. 1"), Ex. 5 ("Prenup.") at ¶¶ 4, 8, ECF No. 51.

On April 24, 2013, Decedent executed the following: his pour-over will, naming Maloney as executor of his estate; his original trust, naming Gicana as first successor trustee and Maloney as second successor trustee; and his durable general power of attorney, naming Maloney as attorney-in-fact. SUF ¶¶ 15-16, 18, 20-21. Maloney received copies of these documents. Id. ¶¶ 17, 19, 22.

On October 16, 2014, Decedent was diagnosed with cancer of the spine. Id. ¶ 5. He started radiation on October 28, 2014 and chemotherapy on November 28, 2014. Id. ¶ 6.

Decedent amended his trust on February 17, 2015. Id. ¶ 29. Through this amendment, Decedent named Maloney as first successor trustee. Gicana's Vol. 1, Ex. 12 ("2/17/15 Tr. Am.") at ¶ 2C. He also required that, upon his death, the trustee would collect the

life insurance policy proceeds payable to the trust, as well as the required minimum distribution amounts from retirement accounts, including 401(k) benefits. Id. ¶¶ 3M-3N. Those proceeds were to fund the gifts of $240,000 each to Decedent's son and Gicana. Id. ¶ 6F(2)-(3).

On February 23, 2015, Maloney designated herself as beneficiary of Decedent's life insurance. SUF ¶ 65[2]; Compl., Ex. B. Decedent's 401(k) beneficiary designation lists Decedent's name but Maloney's address. SUF ¶ 82; see Maloney Dep. 87:14-88:11. Maloney made both of these designations through Decedent's netbenefits.com account. See SUF ¶¶ 55-56, 62-65, 81. Gicana and Maloney dispute whether the designations should have been in Maloney's personal or trustee capacity. It is undisputed that without a designation, all Plan proceeds would have passed entirely to Gicana under AT&T's default rules concerning spouses. Gicana's Ex. Volume 2 ("Gicana's

---

[2] Maloney does not dispute the fact that she designated herself as beneficiary. Rather, Maloney argues she did so "[a]t the direction of Decedent," and she denies that "she did so in her capacity as successor trustee." Maloney's Disputed Facts ("Disputed Facts") ¶ 65, ECF No. 60. As a general matter, all of Maloney's "disputed facts" are problematic because Maloney fails to cite to the record. See Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu, 626 F.3d 483, 488 (9th Cir. 2010)("Judges are not like pigs, hunting for truffles buried in briefs." (quotation omitted)). The dispute about Maloney's capacity here is further unfounded because Maloney explicitly testified that she named herself beneficiary "in [her] capacity as successor trustee." Maloney's Ex. Volume 4 ("Maloney's Vol. 4"), Ex. 10 ("Maloney Dep.") at 74:23-25, ECF No. 61.

Vol. 2"), Ex. 18 at 22, ECF No. 52.

Decedent revoked the $240,000 gift to his son and disinherited him entirely by a trust amendment dated November 11, 2015. Maloney's Ex. Volume 1 ("Maloney's Vol. 1"), Ex. 3, ECF No. 60-1. He then revoked the $240,000 gift to Gicana by a January 30, 2016 trust amendment. Id., Ex. 4. On February 3, 2016, Decedent bequeathed a piece of real property to his son by another trust amendment. Id., Ex. 5.

Due, in part, to metastatic adenocarcinoma of the spine, Decedent passed away on March 15, 2016. SUF ¶ 7. The following day, Maloney submitted a life insurance claim form statement to MetLife, seeking Decedent's life insurance proceeds of $79,000. Id. ¶ 8; Gicana's Request for Judicial Notice ("RJN"), Ex. 42, ECF No. 48. On May 26, 2016, Gicana submitted a rival claim to MetLife for said proceeds. SUF ¶ 9; RJN, Ex. 43. With respect to the 401(k) benefits, Maloney has been receiving the minimum required distributions since Decedent's death but has not been using those distributions for trust purposes or expenses. SUF ¶¶ 83-84; Maloney Dep. 60:6-15.

**B. Procedural Background**

On November 8, 2016, MetLife filed its Complaint-in-Interpleader [1]. Gicana and Maloney subsequently answered and asserted causes of action. The Court dismissed MetLife from the Action on April 28, 2017.

In Gicana's Crossclaim [24] against Maloney, Gicana

5

alleges Maloney is liable for fraud in the inception, conversion, undue influence, breach of fiduciary duty, and fraud. However, in Gicana's Motion, she only argues that Maloney breached her fiduciary duty when she designated herself as beneficiary under the Plan.[3] See Gicana's Mot. for Summ. J. ("Mot.") 24:15-25:5, ECF No. 46. Maloney's Counterclaim [26] is for a declaration that Maloney is the legal owner of the interpled funds.

Gicana filed the instant Motion [45] on January 31, 2018. Maloney timely opposed [59],[4] and Gicana timely replied [63].

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" for purposes of summary judgment if it might affect the outcome of the

---

[3] Since Gicana fails to address any of her other claims in either her Motion or Reply, those claims were abandoned. See Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009)(affirming summary judgment for defendants where plaintiff "abandoned his state law claims by not addressing them in either his Motion for Partial Summary Judgment or his Opposition to Defendants' Motion for Summary Judgment").

[4] In conjunction with her Opposition, Maloney filed her own Motion for Summary Judgment [59]. The Court struck this as untimely [66], since the deadline to file a motion passed two weeks earlier.

6

suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant. <u>Anderson</u>, 477 U.S. at 248. The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the nonmovant. <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1328-29 (9th Cir. 1983). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. <u>Anderson</u>, 477 U.S. at 255.

**B. <u>Analysis</u>**

    1. <u>Gicana's Request for Judicial Notice</u>

Gicana requests the Court take judicial notice of the Complaint and the following exhibits to the Complaint: (1) Decedent's death certificate; (2) Maloney's life insurance claim statement; (3) Gicana's rival claim statement; (4) the summary description of the Plan; and (5) the spousal consent form. Since the Complaint and its exhibits are part of this Court's record, the Court **GRANTS** Gicana's request [48] in its entirety. See <u>Gerritsen v. Warner Bros. Ent'mt Inc.</u>, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015)(citations omitted).

    2. <u>Gicana's Evidentiary Objections</u>

Gicana objects to Maloney's assertion, "At the direction of Decedent, Defendant Maloney was told to designate herself as the beneficiary of Decedent's

retirement benefits." Gicana's Evid. Objs. ¶ 1 (quoting Disputed Facts ¶ 65), ECF No. 64. She further objects to the elaboration under Maloney's Declaration, "As Decedent's condition worsened, he had asked me to assist him with the naming of a beneficiary of his life insurance and retirement proceeds. He had informed me that he wished for me to be named as the beneficiary of the proceeds." Id. (quoting Decl. of Araceli Maloney in Supp. of Maloney's Mot. for Summ. J. ¶ 18, ECF No. 59-1). Because these statements are hearsay and not admissible under any exception, the Court **SUSTAINS** Gicana's objections. See Fed. R. Evid. 802.

   3. The Life Insurance Proceeds

Maloney contends that she is the proper beneficiary of the interpled funds (i.e., Decedent's life insurance proceeds) in that she is the only beneficiary designated and Gicana signed a spousal consent form and prenuptial agreement, disclaiming ownership of these benefits. Gicana counters that the trust is entitled to the interpled funds as a result of Maloney's breach of fiduciary duty in designating herself personally as beneficiary in contravention of the trust terms.

Because the prenuptial agreement explicitly allows subsequent gifts of separate property, see Prenup. ¶ 8, and the spousal consent form alone does not validate

the designation in Maloney's personal capacity,[5] the only issue is the beneficiary designation. Specifically, the Court must determine whether the designation—appearing to name Maloney personally—is invalid due to a breach of fiduciary duty.

### a. *Maloney Acted as a Fiduciary*

A person is a fiduciary by either (1) exercising "any discretionary authority or discretionary control respecting management of [a] plan or exercis[ing] any authority or control respecting management or disposition of its assets" or (2) having "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002. Although Maloney maintains that she simply followed Decedent's instructions, as opposed to exercising discretion, Maloney is a fiduciary because she had control and authority over the disposition of Plan assets.

---

[5] Gicana does not dispute the validity of the spousal consent form in her Motion or Reply, and the form itself supports both Gicana's and Maloney's arguments. Maloney argues that the form allowed Maloney to be the beneficiary. Maloney's Opp'n to Mot. for Summ. J. ("Opp'n") 5:15-16, ECF No. 59. Gicana argues that the form allowed the trustee (i.e., Maloney) to be the beneficiary due to Gicana's inability to receive all of the funds by default when the trust required the money to be distributed for Decedent's son's and Gicana's gifts. Compare Gicana's Vol. 2, Ex. 18 at 22 (explaining that without a beneficiary designation, a married participant's plan assets will be distributed *entirely to the spouse*), with 2/17/15 Tr. Am. ¶ 6F(2)-(3) (bequeathing $240,000 *each* to Decedent's son *and* Gicana). The question remains as to whether Maloney should have been the personal or trustee beneficiary.

9

For instance, as Maloney testified at her deposition, she accessed Decedent's netbenefits.com account and designated a beneficiary in her capacity as successor trustee. Gicana's Ex. Volume 3 ("Gicana's Vol. 3"), Ex. 31 ("Maloney Dep.")[6] at 74:23-25, ECF No. 53. She used his social security number and even created a username and password for his account, giving her access. Id. at 72:20-73:4. Because she controlled the beneficiary designation, she controlled the disposition of Plan assets.

Thus, as a matter of law, Maloney acted as a fiduciary when she made the beneficiary designation.

        b. *Maloney Breached Her Fiduciary Duty*

A fiduciary must not "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Certainly, Maloney's designation of herself as beneficiary of the Plan assets was in her own interest. But she contends she did not breach any duty, as she only followed Decedent's instructions. See Tibble v. Edison Int'l, 711 F.3d 1061, 1070 (9th Cir. 2013)(quoting 29 U.S.C. § 1104(c)(1)(A)(ii)) (recognizing that fiduciaries are not liable for breaches that result from participants' exercise of control).

           i. *Gicana's Evidence*

---

[6] Gicana and Maloney each provided different portions of Maloney's deposition. Hereinafter, the Court will treat the deposition as a single document for citation purposes.

Gicana's evidence that Decedent instructed Maloney to designate herself as beneficiary *in her trustee capacity* is: (1) Decedent's trust, as amended six days before the beneficiary designation and effective at that time; and (2) the rules by which a trust can be designated as the beneficiary of Plan assets.

First, in the amended trust, Decedent stated that the trustee shall "collect the net proceeds of policies, if any, on my life which are then payable to this Trust and shall hold such proceeds for the purposes and upon the trusts provided in Article VI of this Trust Agreement." 2/17/15 Tr. Am. ¶ 3M. Article VI provides that the trustee shall distribute $240,000 each to Decedent's son and Gicana. Id. ¶ 6F(2)-(3). These two gifts are the only monetary gifts in the trust. Maloney, on the other hand, was only the beneficiary of one piece of real property and the residue of the trust. Thus, in order to satisfy the trust gifts, Gicana maintains that the interpled funds belong to the trust, not Maloney personally. She further explains that Maloney was aware of this provision when she designated herself as beneficiary, since Maloney was present when Decedent executed this trust amendment and received a copy of it afterwards. Maloney Dep. 45:2-20, 46:11-22. As such, Maloney knowingly violated her fiduciary duty to advance the trust objectives.

Second, Gicana proffers undisputed evidence that

11

naming a trustee as beneficiary is the proper way to designate the trust as beneficiary. See Gicana's Vol. 2, Ex. 18 at 17. Namely, to designate a trust as beneficiary, the participant must provide "[t]he name, date and tax identification number of the trust (if available). If there has not been a tax identification number assigned to the trust, provide [the participant's] social security number." Id. The participant also must provide "[t]he name and address of one trustee, or the phrase, 'Trustee Under My Last Will As Admitted to Probate,'" as well as "the percentage payable to the trust." Id. Accordingly, Decedent understandably would have Maloney, as successor trustee, designate herself as beneficiary. Maloney properly used Decedent's social security number for the designation. See Gicana's Vol. 2, Ex. 24. The alternative method to name the trust as beneficiary was unavailable because Decedent's trust did not receive an identification number until after Decedent passed away. SUF ¶ 86; Gicana's Vol. 3, Ex. 29.

                ii. *Maloney's Evidence*

Maloney's admissible[7] evidence that Decedent instructed her to designate herself as beneficiary *in her personal capacity* is: Decedent's amendments to his trust on November 11, 2015, January 30, 2016, and February 3, 2016. In those amendments, Decedent voided

---

[7] As discussed, Maloney's assertions of what Decedent told her are inadmissible hearsay.

12

his $240,000 gifts to his son and Gicana. Maloney's Vol. 1, Exs. 3-5. At issue is whether Decedent's purported intent on those dates was the same as his intent in February 2015 when he instructed Maloney to designate a beneficiary, assuming his instructions matched his intent. Gicana argues that this evidence is irrelevant because the amendments long postdate the beneficiary designation on February 23, 2015. See Gicana's Reply in Supp. of Mot. for Summ. J. 3:15-19, ECF No. 63. But at the summary judgment stage, this Court cannot weigh the evidence and must draw all reasonable inferences in Maloney's favor as the non-movant. See Twentieth Century-Fox Film, 715 F.2d at 1328-29.

Nevertheless, while these amendments clearly changed the distributions in Article VI,[8] they did not alter the provision requiring that "[u]pon [Decedent's] death, the Trustee shall proceed immediately to collect the net proceeds of policies, if any, on [Decedent's] life which are then payable to this Trust and shall hold such proceeds for the purposes and upon the trusts provided in Article VI." 2/17/15 Tr. Am. ¶ 3M. In other words, regardless of whether Decedent wanted his sister or his son and Gicana ultimately to receive the funds, the foregoing evidence does not raise a genuine issue of material fact. Instead, the evidence

---

[8] The Court does not speculate as to the validity of the amendments, an issue which is not before this Court.

13

conclusively shows that the life insurance proceeds are payable to the trust.  Indeed, with each amendment, Decedent republished the provision regarding use of his life insurance proceeds.  Maloney's Vol. 1, Ex. 3 at ¶ 3 ("ratif[ying] and confirm[ing]" the effective trust provisions not changed by this amendment); id., Ex. 4 at ¶ 5 (same); id., Ex. 5 at ¶ 4 (same); see Perrin v. Lee, 79 Cal. Rptr. 3d 885, 892 (Ct. App. 2008)(amendments that "'confirm and ratify' the Trust . . . plainly indicate the Trustor intended that, except to the extent particular terms of the Trust were specifically changed by the amendments, the remaining unchanged terms of the Trust would continue in full force and effect").

In sum, there is no genuine dispute that Decedent's trust was to be the true beneficiary of the life insurance proceeds.  Since Maloney failed to clearly designate herself as beneficiary in her trustee capacity, she breached her fiduciary duty.

Accordingly, the Court **GRANTS in part** Gicana's Motion with respect to the interpled funds.

///
///
///
///
///
///
///

///

4. The 401(k) Benefits[9]

    a. *Liability for Breach of Fiduciary Duty*

The foregoing analysis applies equally to the 401(k) benefits. Pursuant to the February 17, 2015 amended trust, retirement benefits, including the 401(k), were to be used for the Article VI distributions. 2/17/15 Tr. Am. ¶ 3N. In Schedule A of the trust, Decedent specifically includes "[t]he payout from the Fidility [sic] 401k account." Id. at 12 ¶ 12. As with the life insurance provision, Decedent republished this retirement benefits provision with each subsequent amendment. Thus, at all times, the trust was to be the beneficiary of the retirement

---

[9] Maloney incorrectly assumes that the 401(k) benefits are not mentioned in Gicana's Notice of Motion or Crossclaim. See Opp'n 2:2-4. In the Notice of Motion, Gicana discusses both the interpled funds and "any other of Decedent's retirement benefits listed" in Decedent's netbenefits.com account. Gicana's Notice of Motion 2:12-18, ECF No. 45. In her Crossclaim, Gicana contends Maloney "secret[ed] all of Decedent[']s assets including, without limitation, his real properties and the Plan Benefits at issue." Gicana's Answer & Cross-cls. ¶ 34, ECF No. 24. She seeks the return of all assets, not merely the interpled funds. Gicana did not need to explicitly identify the 401(k) account as Gicana's causes of action were broad enough through their non-exhaustive lists of "assets" and the prayer was for adjudication of the causes of action. Moreover, Maloney testified about the 401(k) benefits at her deposition and clearly was on notice of Gicana's claim. See also Updike v. Multnomah Cty., 870 F.3d 939, 953 (9th Cir. 2017)(allowing plaintiff to proceed with specific allegations "not previously raised in his complaint" in opposition to a motion for summary judgment because defendant had been "put on notice of the evidence it would need to defend against [the] claims"). As a result, Gicana is entitled to a determination of the proper beneficiary of the 401(k) benefits.

benefits. Moreover, Decedent's own name was listed on the account, despite with Maloney's address. Just as Maloney's name on the life insurance beneficiary designation did not raise a triable issue, neither does Maloney's listed address for the 401(k) benefits. Maloney, as successor trustee, was to receive the 401(k) distributions before using them in accordance with the trust terms.[10]

Accordingly, the Court **GRANTS in part** Gicana's Motion, finding Maloney liable as a matter of law for breach of fiduciary duty in designating herself as beneficiary of the 401(k) benefits.

        b. *Equitable Remedy*

Gicana argues that "Maloney must account for and restore all of Decedent's 401(k) benefits with any profits therefrom, and without penalty, costs, injury or adverse impact upon the true beneficiaries of said benefits." Mot. 25:2-5.

Since Maloney has received some of the 401(k) benefits, see SUF ¶¶ 83-84, restitution in the form of a constructive trust or equitable lien may be imposed to restore the funds to the trust. See, e.g., Leckey v. Stefano, 501 F.3d 212, 230 (3rd Cir. 2007). However, Gicana has not demonstrated how much of the benefits Maloney has received and how she used those

---

[10] The undisputed evidence shows Maloney is not using the distributions in accordance with trust terms. See Maloney Dep. 60:6-61:10.

16

benefits. Without a specific showing that a constructive trust or equitable lien is available in an amount certain on any property, the Court cannot grant such remedies. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)("[A] plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."). Because the parties failed to brief the issue of tracing these assets, the Court cannot determine the exact property over which to impose the constructive trust or equitable lien.[11] See Bilyeu v. Morgan Stanley Long Term Disability Plan, 683 F.3d 1083, 1097 (9th Cir. 2012)(finding that an equitable lien can be imposed "only if there is some property which is subject to the lien" or "identifiable res" (quoting Bonneville Power Admin. v. Wash. Public Power Supply Sys., 956 F.2d 1497, 1507 (9th Cir. 1992)); Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 909 (9th Cir. 2010)("A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a *res* (property or some interest in property); (2) the

---

[11] For instance, Decedent's vested balance within his 401(k) plan was $438,176.02. SUF ¶ 80. However, there is no evidence as to what distributions Maloney received or how she used the money. See Maloney Dep. 60:6-61:10 (simply testifying that she received distributions).

17

right to that *res*; and (3) the wrongful acquisition or detention of the *res* by another party who is not entitled to it." (citing <u>Communist Party of U.S. v. 522 Valencia, Inc.</u>, 41 Cal. Rptr. 2d 618, 623-24 (Ct. App. 1995)).

In sum, although equitable remedies such as a constructive trust or equitable lien on specific assets or an accounting for profits generally may be possible, the matter has not been adequately briefed. As such, the Court **DENIES in part** Gicana's Motion with respect to remedies regarding the 401(k) benefits.

5. <u>Attorneys' Fees and Costs</u>

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[A] fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 560 U.S. 242, 255 (2010)(citation omitted). Once the court has "determin[ed] a litigant has achieved some degree of success on the merits, [it] must still consider the <u>Hummell</u> factors before exercising [its] discretion to award fees under § 1132(g)(1)." <u>Simonia v. Glendale Nissan/Infiniti Disability Plan</u>, 608 F.3d 1118, 1121 (9th Cir. 2010).

Here, neither Gicana nor Maloney make any argument or present any evidence regarding an award of attorneys' fees and costs. As such, the Court **DENIES**

18

Gicana's request.

### III. CONCLUSION

Based on the foregoing, Gicana's Motion for Summary Judgment [45] is **GRANTED in part** concerning the interpled funds and liability with respect to the 401(k) benefits but **DENIED in part** regarding the remedy related to the 401(k) benefits.

**IT IS SO ORDERED.**

DATED: April 3, 2018             /s/ Ronald S. W. Lew
                                 **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge